IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Tony Young, ) | |
| ) | Civil Action No. 8:13-cv-2185-MGL-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Greenwood County Detention Center ) | |
| and Greenwood County Sheriff's Office, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, who is represented by counsel, brings this civil action against the Greenwood County Detention Center ("GCDC") and the Greenwood County Sheriff's Office ("GCSO"), alleging that they violated his federal and state constitutional rights and were grossly negligent while he was in their custody following an arrest, causing him injuries and damages. Under Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the undersigned United States Magistrate Judge.

## BACKGROUND

The plaintiff filed his complaint on July 10, 2013, in the Greenwood County Court of Common Pleas (case number 2013-CP-24-00655), alleging that on August 11, 2011, he was involved in a traffic accident and suffered severe injuries, including broken bones, fractured vertebrae, and bruised internal organs. On August 16th, while he was still in the hospital, GCSO deputies came to arrest him for felony driving under the influence and transported him to the GCDC over his doctor's objections. The plaintiff alleges that, upon arrival at the GCDC, he was forced to strip naked and shower despite his injuries, and he was required to remove a neck brace in order to be photographed. He was then placed in a cell without medical care or medication for days and then later was only provided non-

prescription pain medicine. He furthers complains that during his incarceration at the GCDC, he was improperly treated with steroids and denied physical therapy and that he needed further medical attention (comp. ¶¶ 5-23).

The plaintiff alleges three causes of action against the GCDC and the GCSO: (1) violation of his federal and state constitutional rights against unreasonable search and seizure; (2) failure to supervise police officers, guards, and other employees who interacted with him; and (3) state law claims of gross negligence and recklessness (*id.* ¶¶ 24-56). Notably, the plaintiff did not name as defendants any of the employees allegedly involved.

On August 12, 2013, the defendants removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446, based on the federal constitutional claim. A scheduling order was entered on August 28, 2013, and the parties consented to its amendment five times, allowing for a broad discovery period that ultimately closed on February 27, 2015. During that period, the plaintiff issued subpoenas, conducted depositions, and engaged in written discovery (see doc. nos. 16, 23, 32, 33, 35, and 38). Despite the wide latitude permitted by the court for discovery, no effort was made by the plaintiff to add individual defendants. On March 16, 2015, the defendants filed a motion for summary judgment (doc. 43) based in part on the plaintiff's failure to name as a defendant any individual involved, arguing that they cannot be held liable here under 42 U.S.C. § 1983 based on a theory of *respondeat superior* or municipal liability. The plaintiff thereafter filed a response in opposition (doc. 50), to which the defendants filed a reply (doc. 56).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of

the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

***Municipal Liability/ Respondeat Superior***

The plaintiff has filed suit only against municipal entities GCDC and GCSO and not any individual government employees. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that a municipality or other local governmental entity may be liable under Section 1983 for the violation of a plaintiff's constitutional rights "only where the constitutionally offensive acts of . . . employees are taken in furtherance of some municipal 'policy or custom.' " *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir.1984) (quoting *Monell*, 436 U.S. at 694); *see also Jordan*

*ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994) (outlining "stringent" requirements for imposition of municipal liability). The initial inquiry is whether there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A government policy or custom need not have received formal approval through the municipality's official decision-making channels to subject the municipality to liability. Rather, when an alleged constitutional deprivation is caused by the official actions of those individuals "whose edicts or acts may fairly be said to represent official policy," the government as an entity is responsible under Section 1983. *Monell*, 436 U.S. at 694. Because Section 1983 was not designed to impose municipal liability under the doctrine of *respondeat superior*, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986). Accordingly, the plaintiff is required to adequately plead and prove the existence of an official policy or custom that was fairly attributable to the defendants and that proximately caused the deprivation of his rights. *See Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir.1999)(quoting *Jackson* at 338). "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 411 (1997). If a municipal entity develops an unconstitutional "custom or usage," i.e., a widespread practice of a particular unconstitutional method, such custom or usage may be the basis for municipal liability, "but only if its continued existence can be laid to the fault of municipal policy-makers, and a sufficient causal connection between the 'municipal custom and usage' and the specific violation can then be established." *Randall v. Prince George's Cnty*., 302 F.3d 188, 210 (4th Cir.2002) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir.1987)). "In order for

liability to attach, (1) the municipality must have 'actual or constructive knowledge' of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage ." *Id*. (quoting *Spell*, 824 F.2d at 1391).

In an effort to establish municipal liability, the plaintiff argues as follows: (1) "A policy that deprives inmates of medical attention when medical attention is needed amounts to a deprivation of inmates' constitutional rights" (doc. 50 at 11); (2) "The defendants have taken the position that, in accordance with their policy, the plaintiff was deprived of his medication, which was appropriately prescribed by a doctor. If the defendants deprive inmates of adequate medication pursuant to a policy, the defendants' policy is unconstitutional. . . . It appears that defendants have [a] policy in place that deprives inmates of necessary medication" (*id.* at 14, 22); and (3) "The policy that deprived the plaintiff of a prescribed neck brace because it is 'contraband' is also unconstitutional, and at the very least, a fact question exists for determination by a jury" (*id.* at 22).

In his response in opposition to the motion for summary judgment, the plaintiff has alleged actions by numerous individuals that he claims violated his constitutional rights (*see* doc. 50); however, the plaintiff has provided no evidence linking such action or inaction to the policies or customs of the defendants. Furthermore, to the extent the plaintiff contends that individuals employed by the defendants "deviated from protocol," such does not state a claim that imposes municipal liability. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436, U.S. at 691)); *Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 965 (4th Cir. 1995) (stating that a final decision by an employee that is contrary to municipal policy does not impute liability on municipality); *Gary v. Brewington*, C.A. No. 4:06-2216-PMD-TER, 2008 WL 4458163, at *7 (D.S.C. Sept. 30,

2008) ("[E]ven if the record showed that GCDC staff members did not comply with certain policies regarding the management and treatment of Plaintiff's staph infections, a final decision that is contrary to municipal policy does not impute liability on a municipality.") (citation omitted). The plaintiff has provided only conjecture based on his alleged personal experience, and his conclusory assertions are insufficient to meet his evidentiary burden under Rule 56.

Moreover, the defendants have presented evidence that the applicable GCDC policies and procedures are reasonably related to legitimate penological interests and in no way violated the plaintiff's constitutional rights. Specifically, with regard to medical care, GCDC Policy 4E-01 provides the following:

> The Greenwood County Detention Center shall provide health care services to all inmates who are in need of treatment and care. The medical and health care services shall be provided by qualified Health Care personnel and directed by the Facility Nurse and in compliance with informed consent standards.

(Doc. 56-1 at 5-6, Smith aff., GCDC Policy 4E-01). Pursuant to GCDC policy, inmates may request non-emergent medical and/or health care by filling out a form called an inmate sick call request (*id.* at 18-22, GCDC Policy 4E-26).

With regard to medications, the defendants have presented evidence that Southern Health Partners provides medical services to inmates at the GCDC through a contract (doc. 56-2, Bouknight supp. aff. ¶ 5). The defendants agree that it is a policy of Southern Health Partners not to administer narcotic medications (*id.* ¶ 6); however, the plaintiff has failed to establish that the alleged policy is unconstitutional. In a similar case in the Western District of Virginia, the district court considered claims by a prisoner who, like the plaintiff here, suffered injuries prior to his incarceration. *Sawyer v. Noble*, 708 F. Supp. 2d 591 (W.D. Va. 2010). Sawyer reported to jail and brought with him a narcotic pain medication that had been prescribed to him by a surgeon as a result of his pre-incarceration

6

surgery. *Id*. at 592-93. Under the medical protocol established at that facility, medical staff could not administer narcotic pain medication unless prescribed by a jail physician, even if the inmate had received a valid prescription for the medication prior to commitment to the jail. *Id*. at 593. Further, the narcotic pain medications accompanying any new inmate were destroyed. *Id*. Sawyer filed suit alleging that because he was not treated with narcotic pain medication, he suffered unnecessary pain and discomfort and that the denial of narcotic pain medication constituted deliberate indifference in violation of his constitutional rights. *Id.* The court found that the defendants had no reason to believe that any medical practice at the jail that limited narcotic pain medication was likely to cause the denial of adequate medical care to inmates such as Sawyer. *Id*. In its holding, the court stated:

> Sawyer has presented no evidence, expert or otherwise, that the defendants were likely to have believed that the inmates at the jail were not receiving adequate medical care by virtue of any narcotic pain medication policy put in place by [the jail's chief physician]. The policy excluding any narcotic pain medication not prescribed by a jail physician does not on its face appear unreasonable. Certainly there is no evidence that it violates any standard of which a reasonable correctional official would know. It is common knowledge that many persons obtain pain medication prescriptions by fraud or misrepresentation, and it is reasonable to assume that addicts might try to bring their illegally-obtained narcotics into a jail. While a different policy might also be reasonable, there is no evidence here that defendants Noble and Hembree should have believed that Dr. Ofogh's policy denied adequate medical care to inmates under their control.

*Id.* at 595. The court further pointed out that there was no evidence that the corrections officers knew anything about the specific medical care afforded to the plaintiff by jail medical staff, and, "[w]hile under-medication of prison inmates may be a serious concern, this is a case that calls out for expert opinion, of which there is none." *Id*. The court granted summary judgment in favor of the defendants. *Id*. Likewise here summary judgment is appropriate as the plaintiff has not shown that the defendants had reason to know that the policy of Southern Health Partners prohibiting the administration of narcotic pain

7

medications was likely to cause the denial of adequate medical care to inmates such as the plaintiff.

With regard to the neck brace issue, the defendants state that they do not have any policy that deems C-Spine neck braces are contraband, and, therefore, the plaintiff's statement that the neck brace is contraband is a mischaracterization of anything in the record. The defendants maintain that the plaintiff's neck brace was removed to check for contraband that could be hidden inside of it and so the plaintiff could be photographed. The defendants contend that the collar was returned immediately after it was searched and the plaintiff was photographed, but the plaintiff contends it was kept from him for six days. Although the length of time the plaintiff was without the neck collar is disputed, the duration is not a genuine issue of material fact as the plaintiff has no proof of any policy that caused his alleged injury. Regardless of the variation in facts, the plaintiff has failed to provide evidence that any of the alleged acts were causally connected to a policy or custom of the defendants.

Furthermore, "municipalities are not liable pursuant to *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999) (citing *Monell*, 436 U.S. at 692–94). Local governmental bodies "are not vicariously liable under Section 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Here, the plaintiff has failed to present any evidence that a specific offending policy or custom was maintained by the GCDC or the GCSO that resulted in a deprivation of his constitutional rights. *See Millmine v. Cnty. of Lexington*, C.A. No. 3:09-1644-CMC, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011) (concluding that a county is not liable for an official policy or custom of third party with whom it contracted inmate medical care because such liability is "a respondeat superior theory not viable under § 1983"). Accordingly, the federal

claims under Section 1983 against these defendants must necessarily fail, and the defendants are entitled to summary judgment on these claims.

### *State Law Claims*

The plaintiff alleges that the GCDC and the GCSO are liable under state law for his injuries and damages suffered while he was in their custody, as their conduct amounted to gross negligence. A governmental entity in South Carolina may be held liable for its gross negligence in the performance of its responsibility or duty of supervision, protection, control, confinement, or custody of its prisoner. *See* S.C. Code Ann. § 15-78-60(25). The defendants argue that the plaintiff has failed to show that they were grossly negligent and ask this court to dismiss the state law claims in this action. In response, the plaintiff provides his sworn deposition testimony and that of other witnesses to argue that issues of material fact exist as to whether the defendants acted with gross negligence on a variety of matters regarding his custody and care as a prisoner (docs. 52-3 through 9).

Having found that the defendants are entitled to summary judgment regarding the plaintiff's federal claims, it is recommended that the court decline to exercise supplemental jurisdiction to decide any claims for relief construed by the court to be asserted pursuant to state law. It is further recommended that the case be remanded to the Greenwood County Court of Common Pleas for determination of such claims.[1] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (federal district court has discretion to remand to state court a removed case when no federal claims remain).

---

[1] Dismissal of the plaintiff's state law claims in lieu of remand here may result in a limitations issue in state court. *See* S.C. Code Ann. § 15-3-530.

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the District Court grant the defendants' motion for summary judgment as to the plaintiff's claims under 42 U.S.C. § 1983 (doc. 43). It is also recommended that the District Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims and instead remand the case to the Greenwood County Court of Common Pleas. The attention of the parties is directed to the notice on the next page.

>s/ Kevin F. McDonald
>United States Magistrate Judge

December 11, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).